Annemarie Hoffmann **BECKWITH**, Appellant,

v.

Robert T. L. **BECKWITH**, Appellee.

No. 11492.

District of Columbia Court of Appeals.

Argued April 22, 1977.

Decided Oct. 31, 1977.

Rehearing and Rehearing en Banc Denied Jan. 5, 1978.

Thomas Penfield Jackson, Washington, D. C., with whom Patricia D. Gurne, Washington, D. C., was on the brief, for appellant.

Elizabeth R. Young, Washington, D. C., for appellee.

Before KELLY, NEBEKER and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

This is the second time the parties in this divorce action have been before this court. The first appeal, *Beckwith v. Beckwith,* D.C.App., 355 A.2d 537 (1976) (*Beckwith I*), chronicled the detailed pleadings filed and established that for this divorce action the trial court had subject matter jurisdiction over the case, had personal jurisdiction over the parties, and could order the wife and her son to submit to blood grouping tests. We further mandated that Mrs. Beckwith's son would not be "bound by the result of this proceeding in any subsequent case where his legitimacy is questioned." *Id.* at 542. This second appeal is a consequence of the trial court's actions after remand from the first appeal.

Additional facts relevant to this second appeal must be noted. *Beckwith I* was decided on April 1, 1976, and on April 6 appellant (Mrs. Beckwith) filed a timely petition for rehearing or hearing en banc. D.C.App.R. 40. Under D.C.App.R. 41 the

petition for rehearing stays the mandate of this court until disposition of the petition. We denied the petition on June 1, 1976. Under Rule 41, the court's mandate issued seven days later and was dated June 9, 1976.

While this court had before it the petition for rehearing, the trial judge, on April 13, 1976, pursuant to the remand instructions in our April 1 opinion (*id.* at 547), ordered Mrs. Beckwith and her son to undergo blood grouping tests and also ordered her husband to pay counsel fees and suit money (wife's maintenance and transportation expenses). The April 13 order required that the tests be completed within 30 days and that payment be made within 10 days. Nothing further happened in the trial court until after this court's mandate issued on June 9.

On June 10, appellee paid appellant's attorney the ordered attorney's fees ($3,000) and suit money ($1,000). Appellant's attorney kept the $3,000 but returned the suit money to appellee's attorney stating that he (wife's attorney) had been "unable to make any definite arrangements . . . to schedule further proceedings [in this case]."

On June 17, appellee filed a motion to set a definite trial date and to impose sanctions on Mrs. Beckwith for failing to submit to the blood grouping tests. One June 20, appellant's attorney filed a "motion to extend time to respond to motion to set definite trial date and to impose sanctions." In this motion, he stated that he had "never seen or spoken personally" with Mrs. Beckwith but that he had attempted "by cable, telephone, and correspondence" to communicate with her. He stated further that, with the aid of "correspondent counsel" in Memphis, Tennessee, he expected to meet with Mrs. Beckwith within the next two weeks. Appellee opposed the motion.

The trial judge denied appellant's motion and, on July 2, set trial for July 12, 1976.[1] A subsequent continuance motion, to delay trial for three months, also was denied.

On July 12, all necessary parties were in the trial courtroom except Mrs. Beckwith, and the judge postponed trial for one week. On July 13, the trial judge issued two orders that Mrs. Beckwith show cause: (1) why she should not be held in contempt for failing to submit to the ordered blood grouping tests, and (2) why her counterclaim should not be stricken for her failure to appear at trial on July 12.

Trial was held on July 19 and several significant things occurred or were established: (1) Mrs. Beckwith was not present, but her attorney presented Mrs. Beckwith's affidavit wherein she stated that her non-appearance was out of concern for her son's safety and out of concern that her son's legitimacy not be at issue in this divorce action between her and her husband; (2) Mr. Beckwith presented his case and (a) introduced an affidavit in the form of a separation agreement executed by him and his wife which acknowledged that "without the knowledge or consent of [her husband, she] became pregnant by a man unknown to [her husband],"[2] and (b) established by medical testimony that he had had a vasectomy in 1962 in connection with prostate surgery and was still sterile as of August 1968;[3] and (3) it was established that Mrs. Beckwith's son was born in October 1968.

The formal orders disposing of the merits of this case stated that Mrs. Beckwith's counterclaim for divorce on cruelty, adultery, or desertion grounds had been stricken because of her failure to appear at trial and granted Mr. Beckwith's divorce request on the ground of adultery. With respect to

1. The court's order stated that "it appear[ed] to the Court that there have been inordinate delays for questionable reasons in this three year old case and that there is no credible proof of any reason why the Court should extend [wife's] time."

2. Appellant asserts in her answer and on appeal that her signature on this affidavit was

obtained by fraud and duress. No evidence of such was presented at trial.

3. Mr. Beckwith was allowed to reopen his case on August 4 for the sole purpose of taking testimony from one physician who had performed the vasectomy and to permit his cross-examination by wife's counsel.

the blood grouping tests, the trial judge stated that it is

FURTHER *ORDERED* with respect to the refusal of the defendant to submit herself and her child to blood-grouping tests, the sanction of contempt having been an attempt to obtain necessary and material testimony before the Court, and with the case having now been decided, such adjudication becomes moot and the Rule to Show Cause is discharged.

## I.

Appellant's first three issues on appeal relate to procedural aspects of this case. She first contends that the trial court was without jurisdiction on April 13 to order the blood grouping tests and consequently was without jurisdiction to adjudge her in contempt. While appellant's argument may be a valid statement of the law, the entire contempt issue is not properly before us.

■ Appellant can only appeal from an adverse final order and judgment of the Superior Court. D.C.Code 1973, § 11–721. In the instant case there is no such final order or judgment respecting the blood grouping tests because the trial judge declared the issue moot and discharged his Order to Show Cause. Mrs. Beckwith was never "punished" for not submitting to the tests and, absent the imposition of a sanction, the contempt citation alone is not a final order and raises no justiciable issue for appeal. *In re Cys,* D.C.App., 362 A.2d 726, 728–29 (1976); *West v. United States,* D.C.App., 346 A.2d 504, 505 (1975).

■ Appellant's second procedural issue concerns the trial court's denial of her motion for a three-month continuance. The denial of a continuance rests in the sound discretion of the trial judge and will not be disturbed on appeal absent a showing of an abuse of discretion. *Ungar v. Sarafete,* 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); *Feaster v. Feaster,* D.C.App., 359 A.2d 272, 273 (1976). No such showing was made by appellant nor could it be on the record in this case. The trial judge specifically ruled in an order denying appellant's earlier extension of time motion "that there have been inordinate delays for questionable reasons on this three year old case and that there is no credible proof of any reason why the Court should extend [appellant's] time." This is not a case where a trial judge merely acquiesced in a prior ruling by another judge or a case where a party's presence was precluded by uncontested illness. *See Feaster v. Feaster, supra.* Nor was appellant, as she alleges, denied the opportunity to undertake discovery in this case. Appellee's responses to appellant's interrogatories were received, and it was appellant who cancelled deposition sessions with appellee. We cannot say that it was an abuse of discretion to deny the three-month continuance request.

■ The final procedural issue concerns the propriety of the trial court's dismissal of appellant's amended counterclaim. A trial court may, in its discretion, dismiss a claim which has not been prosecuted with reasonable diligence. Super.Ct.Civ.R. 41(b) and (c);[4] *Link v. Wabash Railroad Co.,* 370

4. Rule 41: Dismissal of actions:

(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judg-

ment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

(c) Dismissal of Counterclaim, Cross-Claim or Third-Party Claim. The provisions of this rule apply to the dismissal of any counterclaim, cross-claim, or third-party

U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); [5] *Wells v. Wynn,* D.C.App., 311 A.2d 829 (1973); *Garces v. Bradley,* D.C.App., 299 A.2d 142 (1973). This court will interfere with the exercise of that discretion only in extreme cases. *Link v. Wabash Railroad Co., supra,* 370 U.S. at 633, 82 S.Ct. 1386; *Bailey v. Washington Motor Truck Transportation Employees Pension Trust,* D.C. App., 240 A.2d 133, 134 (1968).

■ In the opinion and order filed by the trial court on October 1, 1976, Judge Ryan described the dilatoriness which led him to conclude that dismissal of appellant's counterclaim was appropriate.

. . . In January, 1974, an appearance was entered by counsel retained to represent the wife. A Motion for a continuance to allow counsel to prepare for trial and consult with the client was requested. Defense counsel also filed a motion to quash service and to oppose the motion to add the son as a party-defendant and to further dismiss or strike the amended complaint. The initial hearing on the motions was again postponed by counsel for the wife to March, 1974. The motion to quash was overruled, but the motion to strike the amended complaint was granted. In March 1974 defendant served interrogatories upon plaintiff and also filed a motion to dismiss for lack of subject matter jurisdiction. Although the interrogatories were answered by plaintiff, on April 7, 1974, defendant asked for a continuance for the purpose of taking depositions. Another continuance in May of 1974 re-set the motions to June. In June another continuance was granted to consolidate motions and to arrange the order in which they should be heard.

Although defendant's motion to compel discovery was withdrawn, Judge Pryor on July 31, 1974, overruled the motion to dismiss which had been set for hearing and also held as moot a motion for a protective order. On August 5, 1974, to allow the defendant to fully respond to the complaint, plaintiff consented to a continuance until September 1, 1974. It is interesting to note that in this motion counsel for defendant specifically stated that he had not contacted his client and needed further instructions from her.

On August 29, 1974 for the same reason a further enlargement of time was granted to respond until October 1, 1974. An Answer and counter-claim was finally filed September 27, 1974—eleven months after suit had been instituted. A motion for suit money and counsel fees *pendente lite* accompanied the Answer. An opposition to this was filed together with a motion to dismiss the counter-claim.

Another continuance was sought and granted on November 5, 1974 followed by a continuance on January 7, 1975 until February 13, 1975. On March 10, 1975 the court heard the motions for suit money and counsel fees and granted them conditioned upon the defendant and child undergoing a blood test to determine paternity. On the same day the court granted the motion to dismiss the counter-claim but allowed defendant ten days in which to amend. Defendant had also filed a request for production of documents to which there was opposition and defendant opposed the order of the court as to the blood-grouping tests. The documents were produced within two weeks, but the dispute arising out of the order for blood-grouping tests resulted in a further order dated March 19, 1975.

Defendant noted an appeal on March 14, 1975 and on November 13, 1975 the Court of Appeals heard argument. The decision in the case was rendered April 1, 1976. The Order on Remand gave defendant thirty days in which to comply with the blood-grouping test order. On

---

claim. A voluntary dismissal by the claimant alone pursuant to paragraph (1) of subdivision (a) of this rule shall be made before a responsive pleading is served or, if there is none, before the introduction of evidence at the trial or hearing.

5. Super.Ct.Civ.R. 41 is virtually identical to Rule 41 of the Federal Rules of Civil Procedure. It should, therefore, be construed in light of cases such as *Link* which have involved the federal counterpart. *Campbell v. United States,* D.C.App., 295 A.2d 498, 501 (1972).

June 17, 1976 plaintiff filed a motion to impose sanctions and also to set a trial date certain. Counsel for defendant replied requesting additional time to answer the motion and also to consult with the defendant. Counsel admitted he had never seen or talked with defendant during the two and one-half years of representing her even though several [continuances had] been sought and granted for that very purpose. On July 2, 1976 the court ordered that trial be set ten days from that date but refrained from imposing sanctions.

On July 12th the plaintiff and his attorney appeared as well as the attorneys for the defendant. Not only was defense counsel unprepared for trial but it also appeared that a reply to the amended counter-claim of March 10, 1975 had not yet been filed. A Motion for leave to file such pleading had been filed on July 8, 1976 as well as the actual reply itself. The Reply to the amended counter-claim which was a *pro forma* reply was accepted as filed and a continuance of one week was granted. Defendant then sought to argue motions for continuance and to dismiss which counsel claimed had been filed but which were not reflected in the court jacket. The court ruled orally that both motions would be overruled.

It appeared that typed motions of that identical nature were filed the next day, July 13, 1976, the day following the oral order of the trial court overruling them. The record reveals also that on July 13, 1976 defendant had noticed plaintiff for deposition. The Orders to Show Cause were signed on July 13, 1976 in an attempt to secure defendant's presence or her compliance with the earlier Order on Remand. These Orders included the sanctions of striking defendant's counterclaim for her failure to prosecute as well as adjudicating her in contempt for refusal to comply with the Order on Remand.

A trial was finally commenced on July 19, 1976 after the court overruled oral motions of defendant to disqualify the court on the basis of bias and prejudice. An affidavit from the State of Florida apparently signed by defendant, but not certified by counsel was held by the court to be legally insufficient. . . .

Under these circumstances, dismissal of appellant's counterclaim was not an abuse of discretion.[6]

## II.

Appellant's final contention on appeal is that the trial judge erred in awarding Mr. Beckwith a divorce on the ground of adultery. The evidence on the adultery issue presented at trial established the birth of Mrs. Beckwith's son in October 1968 and that Mr. Beckwith was sterile in August 1968, as a consequence of 1962 prostate surgery. A physician testified that, "Mr. Beckwith was completely sterile from the time of his operation in '62 to '68 when he came back to me . . . .." In addition, Mrs. Beckwith's affidavit averring that Mr. Beckwith was not the father of her son was admitted as evidence and included the statement that Mrs. Beckwith's pregnancy by a man unknown to her husband was without her husband's consent. Appellant did not offer any evidence to disprove adultery and now asserts that because the possible explanations of artificial insemination (without her husband's consent) or rape to account for her son's birth were not disproved by her husband at trial, the charge of adultery was not proved by the required clear and convincing evidence. In its opinion and order the trial court said: "The court finds by clear and convincing evidence that the plaintiff was not and could not have been the father of the child."

▬ ▬ Adultery is voluntary sexual intercourse by a married person with someone other than his or her spouse. 27A C.J.S. *Divorce* § 21 (1968); 24 Am.Jur.2d, *Divorce and Separation* § 25 (1966); *Nelson, Divorce*

---

6. A number of other courts have found dismissal appropriate under similar circumstances. *E. g., Wojton v. Marks*, 344 F.2d 222 (7th Cir. 1965); *Esteva v. House of Seagram, Inc.*, 314 F.2d 827 (7th Cir. 1963); *Deep South Oil Co. of Texas v. Metropolitan Life Ins. Co.*, 310 F.2d 933 (2d Cir. 1962).

*and Annulment,* Vol. 1, § 5.04, at 168 (2d ed. 1945); *Flood v. Flood,* 24 Md.App. 395, 330 A.2d 715 (1975); *Brodsky v. Brodsky,* 153 Conn. 299, 216 A.2d 180 (1966). In this jurisdiction it is well settled that adultery must be proved by clear and convincing evidence. Mere circumstances of suspicion are insufficient to sustain the charge. *Snyder v. Snyder,* D.C.App., 222 A.2d 850, 851 (1966); *Stephenson v. Stephenson,* D.C. App., 221 A.2d 917, 918 (1966); *Hagans v. Hagans,* D.C.App., 215 A.2d 842, 844 (1966); *Line v. Line,* D.C.Mun.App., 177 A.2d 271, 272 (1962). There is no doubt, however, that circumstantial evidence can be used to prove adultery, *Stephenson, supra,* and that no eyewitness proof is required. *Stewart v. Stewart,* 52 U.S.App.D.C. 323, 286 F. 987 (1923). "The degree of requisite corroborative proof varies from case to case and cannot be expressed in a rule of general application." *Coven v. Coven,* 64 N.J.Super. 6, 165 A.2d 200, 201 (App.Div. 1960).

In this case, the evidence that Mr. Beckwith was incapable of procreation in 1968 and Mrs. Beckwith's admission that her son had been fathered by someone other than her husband are more than sufficient to support the trial court's finding of adultery. It was not necessary for appellee to disprove every alternative explanation of the child's conception.

The judgment of the trial court is

*Affirmed.*

KELLY, Associate Judge, concurring:

As I understand the record, appellant's counterclaim was stricken because she deliberately refused to appear and show cause why she should not be held in contempt of court. Although the word "dismissal" was occasionally used in the colloquy between court and counsel,[1] appellant could not thereafter prosecute a counterclaim which had been stricken. Since I believe the court's action in striking the counterclaim was an appropriate sanction to impose, however, I concur in the finding of no abuse

of discretion and join in the remainder of the court's opinion.

---

1. A claim or counterclaim may also be dismissed for failure to "comply with . . . any order of the court." Super.Ct.Civ.R. 41(b) and (c).