**Gloria TAYLOR, Appellant,**

v.

**WASHINGTON HOSPITAL CENTER, Basil Economopoulos, and Adolfo DePerio, Appellees.**

**No. 13511.**

District of Columbia Court of Appeals.

Argued April 26, 1979.

Decided Oct. 3, 1979.

Rehearing and Rehearing En Banc Denied Nov. 26, 1979.

---

Robert J. Stanford, Washington, D. C., for appellant.

John F. Mahoney, Jr., Washington, D. C., for appellee Washington Hospital Center.

Christopher L. Allen, Wheaton, Md., with whom James A. Welch, Wheaton, Md., was on the brief, for appellees Economopoulos and DePerio.

Before KERN, HARRIS and MACK, Associate Judges.

HARRIS, Associate Judge:

This appeal is from the trial court's dismissal with prejudice under Super.Ct.Civ.R. 41(b) of Gloria Taylor's claim of medical malpractice in the care and treatment rendered to her during an operation to remove a brain tumor. Specifically, appellant challenges the trial court's adverse rulings on her related day-of-trial motions (1) for leave to amend her pretrial statement and (2) for a continuance. Following the denial of those motions, appellant refused to go forward to trial; the court then granted defense motions to dismiss with prejudice for failure to prosecute. We affirm.

I

On December 21, 1973, appellant underwent the surgical removal of a brain tumor (which proved to be benign) in an operation performed by staff personnel of the Washington Hospital Center. Apparently as a result of a momentary deficiency of blood (and, hence, of oxygen) flowing to the brain during surgery, Taylor came out of the operation with paralysis of her left side and some mental impairment. Both the motor and mental impairments improved substantially during a three-and-one-half-month post-operative hospital stay; however, she was left with certain intellectual deficiencies and a marked motor deficiency of her left leg which may be permanent.

After obtaining the relevant hospital records, appellant Taylor, then proceeding pro se, filed suit on December 20, 1976, naming as defendants—allegedly jointly and severally liable for negligence—the two neurosurgeons who performed the operation, the attending anesthesiologists, who were appellees Drs. Economopoulos and DePerio, and appellee Washington Hospital Center. Miss Taylor claimed $1,000,000 in damages.

At a status hearing in April 1977, trial was scheduled for April 10, 1978. After consulting with a specialist in neurosurgery and with her present attorney, on July 12, 1977, appellant voluntarily dismissed with prejudice the claims against the two neurosurgeons. On the following day, appellant's counsel filed a praecipe formally entering the case. Later, counsel attempted to schedule depositions of the appellee anesthesiologists during the fall, but those depositions ultimately were not taken until February 27, 1978. While the record reflects that appellant was thwarted from taking those depositions at an earlier date by the anesthesiologists' (and their counsel's) scheduling problems, at no time before the depositions were taken did appellant take steps to expedite discovery (or move for a postponement of trial). On the day of the depositions (with trial only six weeks away), appellant's counsel did address a letter to the trial judge informing him that it would take some weeks to have the depositions transcribed and available for review by appellant's expert anesthesiologist, and that appellant therefore would find it extremely difficult to go ahead with the April 10 trial date. Appellant requested that, in light of the circumstances, a scheduled March 3 conference be devoted to establishing new dates for pretrial and trial.

At the March 3 status hearing, counsel expanded on these and other difficulties which appellant would have in becoming ready for trial in the five weeks remaining.

After a lengthy colloquy between the judge and all counsel on the possibility and ramifications of a continuance, it was agreed (1) that the trial date tentatively would remain as calendared, (2) that perhaps trial could be pushed back a few days or a week if need be, and (3) that appellant's counsel would exert his best efforts to speedily obtain the crucial expert opinion and any other necessary discovery. Subsequently, the trial date was postponed two days to April 12 and another pretrial conference was scheduled for April 4.[1]

In the meantime, plaintiff's counsel had conveyed to their expert a summary of the anesthesiologists' depositions, but the actual transcribed texts did not become available until March 27. The plaintiff's expert did not have these in hand (as yet unreviewed by the deponents) until a few days thereafter. (Counsel did not order expedited copies of the deposition from the court reporter.) Appellant did not move for a continuance at the April 4 pretrial conference. Instead, appellant submitted her pretrial statement putting forth various theories of the defendants' negligence which reflected her expert's recent study of the deposition transcripts and hospital records. The trial court then issued its pretrial order incorporating appellant's statement, appellees' statements (denials), and appellee hospital's cross-claim against the appellee anesthesiologists.

Pursuant to agreement, on April 10 appellant filed with the court and opposing counsel a Statement of Principal Contentions by her expert. However, that statement put forth revised theories of negligence against the anesthesiologists, and named as an additional defendant a Dr. Fatehi, a former resident in neurosurgery at the Washington Hospital Center who had taken over from the operating surgeons to close Miss Taylor's surgical wound.

Two days later, on the morning of trial, upon appellees' objection to such an enlargement of the issues, appellant formally moved for leave to amend her pretrial statement in order to incorporate the latest opinion of her expert. In support of her motion, appellant reminded the court that her original pretrial statement had been based on the expert's perusal of the deposition transcripts as unreviewed for corrections by the deponents, that appellant had not received those corrections until April 7 (three days after the pretrial conference), and that one of the appellee anesthesiologists had made a few crucial changes in his answers—forcing appellant, in last-minute consultation with her expert, to alter her allegations of negligence against the anesthesiologists and to focus as well on the possible negligence of Dr. Fatehi. Specifically, appellant vigorously argued that her pretrial statement's focus on the negligence of the anesthesiologists and of the hospital support personnel in taking too long to respond to appellant's in-surgery cardiac arrest, and to revive her, reflected a virtual admission by Dr. DePerio in his deposition that there had been a ten-minute lapse from the time the patient showed an irregular heartbeat to the time it was restored to normal. On his review of the transcribed deposition, Dr. DePerio had changed two answers so as to eliminate this supposed "admission," thus forcing appellant to reconsider all the evidence and pinpoint other possible instances of negligence (including any on the part of Dr. Fatehi). Appellant urged that in view of the timing problems encountered through no fault of her own, and in view of her prior pleas (in her counsel's letter of February 27, and at the March 3 conference) for the judge to recognize the difficulties of going ahead with trial on schedule, fairness would dictate that the court allow her to modify her pretrial statement and proceed to trial accordingly.

The court denied that motion, concluding that the deposition transcript corrections made by Dr. DePerio, viewed in the context of the whole record, did not really present appellant with new evidence such as to jus-

1. The record is not clear as to precisely when the judge authorized this two-day postponement.

tify allowing a modification of her pretrial statement. The court noted as well that despite appellant's previously expressed reservations about the scheduled trial date, she had engaged in the April 4 pretrial conference without objection and without then requesting a continuance.

Counsel for appellant then framed his request in a different way, asking for a continuance to allow the appellees time to meet the new matters appellant wished to address, with the hope that the court then would view the request to amend more favorably. This request the court also denied. At that point, counsel expressed what he perceived to be the impossibility of going forward as limited by the original pretrial statement, and refused to do so. Appellees then joined in a motion to dismiss for failure to prosecute. After a lengthy colloquy during which appellant requested that the action be stayed rather than dismissed with prejudice, the motion to dismiss was granted. Appellant then noted this appeal.[2]

## II

■ Although appellant focuses on the trial court's adverse rulings on her procedural motions, we deem it desirable to call attention first to the circumstances of the dismissal with prejudice which followed. Appellant refused to go forward to trial after the court denied her motions to amend her pretrial statement and for a further continuance, appellees then joined in a motion to dismiss for failure to prosecute under Super.Ct.Civ.R. 41(b), and that motion was granted after a discussion of other alternatives.[3]

---

2. Though in their briefs both appellant and the appellee anesthesiologists refer to an Order issued by Judge Goodrich on August 23, 1978, denying appellant's motion for reconsideration of the judgment, the denial of that motion is not a part of the record before us on this appeal.

3. Super.Ct.Civ.R. 41(b), entitled Involuntary Dismissal: Effect Thereof, provides in pertinent part:

   For failure of the plaintiff to prosecute or to comply with these rules or any order of court, defendant may move for dismissal of an action or of any claim against him.

■ Initially, we emphasize that dismissal under Rule 41(b) generally rests within the broad discretion of the trial judge, to be disturbed only in case of obvious abuse. *See Beckwith v. Beckwith*, D.C. App., 379 A.2d 955, 958–59 (1977); *Akinyode v. Hawkins*, D.C.App., 292 A.2d 795, 796–97 (1972); *accord, D.C. Transit System, Inc. v. Young*, D.C.App., 293 A.2d 488, 489–90 (1972). *See also* 5 Moore's Federal Practice ¶ 41.11[2] at 41–117 (1978 ed.) and cases cited therein.[4]

■ Of course, dismissal under this rule is a harsh sanction—"a final and definitive doom" precluding a preferred disposition on the merits. *Garces v. Bradley*, D.C.App., 299 A.2d 142, 144 (1973). Therefore, in the typical case simply calling into question a plaintiff's diligence in prosecuting his case, the trial court is well-advised to consider applying a lesser sanction, and an appellate court may well find an abuse of discretion where there has been no showing that the defendant actually would be prejudiced by the delay. *Ibid.*; 5 Moore's, *supra*, ¶ 41.-11[2] at 41–140–46. *See also Foxboro Co. v. Fischer & Porter Co.*, 29 F.R.D. 522 (E.D.Pa. 1961). However, where the case progresses to the day of trial and the plaintiff, disappointed by rulings of the court which are adverse to her case, then refuses to go forward, a Rule 41(b) dismissal may be appropriate.

■ In such a situation the aggrieved plaintiff is free to—and should—proceed to trial as limited by the court's procedural rulings, and if not successful at trial chal-

---

A dismissal under Rule 41(b), unless otherwise specified, is with prejudice. *See Boyle Bros., Inc. v. Holt*, D.C.Mun.App., 83 A.2d 666, 668 (1951).

4. A Superior Court rule which is literally or substantially identical to a corresponding federal rule (as in Super.Ct.Civ.R. 41) is to be construed in light of the meaning of that federal rule. *See Sellars v. United States*, D.C.App., 401 A.2d 974, 978 (1979); *Campbell v. United States*, D.C.App., 295 A.2d 498, 501 (1972); D.C.Code 1973, § 11–946.

lenge those rulings on appeal. *See Marshall v. Sielaff*, 492 F.2d 917, 919 (3d Cir. 1974). A trial judge understandably need not look kindly upon last-minute maneuvers which would wreak havoc on the court's trial calendar, and in the face of a refusal to go forward may in his discretion reject plaintiff's suggestion of dismissing without prejudice or resorting to some other milder sanction. *See, e. g., Giovanetti v. Georgetown University Hospital*, 22 F.R.D. 493, 494 (D.D.C.1958), *cert. denied*, 361 U.S. 831, 80 S.Ct. 81, 4 L.Ed.2d 73 (1959). We are loath to disturb a dismissal with prejudice under the circumstances presented here.

Several courts have supported this view, in cases with factual situations similar to those of the case at bar. *Brennan v. Sine*, 495 F.2d 875 (10th Cir. 1974) (dismissal held justified where plaintiff failed to have any evidence to present at trial, even though answers to interrogatories on which plaintiff was assertedly dependent were not due until after the date set for trial and thus were not available); *Marshall v. Sielaff, supra* (dismissal affirmed where, after the trial judge denied plaintiff's motion to order the appearance of certain witnesses for plaintiff, plaintiff had refused to proceed with the trial); *Michelsen v. Moore-McCormack Lines*, 429 F.2d 394 (2d Cir. 1970) (dismissal of seaman's personal injury claim affirmed where counsel moved for adjournment on the day of trial because plaintiff was at sea, the trial court denied the motion, and counsel refused to go forward on the basis of plaintiff's deposition and other evidence); *Giovanetti v. Georgetown University Hospital, supra* (under the circumstances and in view of counsel's statement on the day of trial that he could not prove plaintiff's case on the issues as limited by the court's earlier pretrial order, the court dismissed for failure to prosecute). *See also Ali v. A & G Co., Inc.*, 542 F.2d 595 (2d Cir. 1976); *Theilmann v. Rutland Hospital, Inc.*, 455 F.2d 853 (2d Cir. 1972); *Thompson v. Fleming*, 402 F.2d 266 (5th Cir. 1968).

There is, in fact, authority for the proposition that in such situations a dismissal may be affirmed without considering the merits of the underlying ruling(s) which prompted the plaintiff to refuse to proceed. *See Marshall v. Sielaff, supra*, at 919. We need not (and do not) follow that narrow approach in order to affirm here, for it is clear that the trial judge did not abuse his discretion in ruling on appellant's motions. Thus, while we may imagine a case in which a trial court's preliminary rulings might be so unjustly burdensome or promotive of a wastage of judicial resources that we would consider reversing a subsequent dismissal for refusal to go forward to trial, here we feel obliged to affirm the dismissal and its underlying bases.

### III

The trial judge first denied appellant's day-of-trial motion to amend her pretrial statement, ruling that appellant would have to proceed to trial on the theories and against the defendants included in the pretrial order (which had incorporated appellant's pretrial statement). Super.Ct.Civ.R. 16, which guides pretrial practice, reads in pertinent part:

> In any action, the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider
>
> (1) The simplification of the issues;
>
> \* \* \* \* \* \*
>
> (6) Such other matters as may aid in the disposition of the action.
>
> The court shall make an order which recites the action taken at the conference, . . . and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice.

Thus the parties' pretrial statements are incorporated into an order which narrows the issues in order to simplify the trial. *See generally* 3 Moore's, *supra*, ¶ 16.01 *et seq.; Handbook for Effective Pretrial Procedure*, 37 F.R.D. 255, 263–73 (1964); *Proceedings of the Seminar on Procedures*

for Effective Judicial Administration, 29 F.R.D. 191, 315–426, 454–61 (1961). The existing pretrial procedures contemplate that fair disclosure will be made to remove cases from the realm of surprise, and both parties generally are bound by the pretrial order. *All Weather Storm Windows, Inc. v. Zahn,* D.C.Mun.App., 112 A.2d 496, 497 (1955). Whether to allow a party to go beyond the bounds of the pretrial order in its trial presentation is a matter left to the court's discretion to be exercised in light of Rule 16's language authorizing modification in the proper case "to prevent manifest injustice." *See Manes v. Dowling,* D.C. App., 375 A.2d 221, 224 (1977); *Town Center Management Corp. v. Chavez,* D.C.App., 373 A.2d 238, 243–44 (1977); *Clarke v. District of Columbia,* D.C.App., 311 A.2d 508, 511 (1973); *Redding v. Capital Cab Co.,* D.C.App., 284 A.2d 54, 55 (1971); *Manbeck v. Ostrowski,* 128 U.S.App.D.C. 1, 6, 384 F.2d 970, 975 (1967), *cert. denied,* 390 U.S. 966, 88 S.Ct. 1077, 19 L.Ed.2d 1170 (1968). *See generally,* Note, *Federal Pre-Trial Practice: A Study of Modification and Sanctions,* 51 Geo.L.J. 309 (1963).

▪ The decisions reflect a substantial range of opinion as to the governing spirit in this area, and thus provide an imprecise guide for our evaluation of such an exercise of discretion. It has been said, accurately, that:

> Whether to allow such a modification in a particular case poses nice questions of balancing "the need for doing justice on the merits between the parties . . . against the need for maintaining orderly and efficient procedural arrangements." [*Laguna v. American Export Isbrandtsen Lines, Inc.,* 439 F.2d 97, 101 (2d Cir. 1971), *quoting* 3 Moore's, *supra,* ¶ 16.20 at 1136.]

Also to be figured in the equation are considerations of substantial inconvenience and/or prejudice to the party opposing the requested departure from the pretrial order.

▪ As a basic proposition, where the parties willingly submit pretrial statements which then are incorporated in an order prepared by the court, that order defines the bounds of evidence to be permitted at trial, absent exceptional circumstances. *Redding v. Capital Cab Co., supra; McCarthy v. Lerner Stores Corp.,* 9 F.R.D. 31 (D.D.C.1949). On the other hand, Rule 16 "does not contemplate or require that rigid adherence to the pretrial order must always be exacted." *Clarke v. District of Columbia, supra,* at 511. "Designed to promote litigation on the merits, pretrial must not, of course, be used to thwart its very objective." 3 Moore's *supra,* ¶ 16.20 at 1138.

▪ For example, modification has been allowed where evidence consistent with the proposed modification already has been introduced at trial without objection [by analogy to the dictates of Super.Ct.Civ.R. 15(b)], *Seek v. Edgar,* D.C.App., 293 A.2d 474, 476–77 (1972); where it is clear that the opposing party would not really be surprised by the proposed proffer, *Clarke v. District of Columbia, supra; Laguna v. American Export Isbrandtsen Lines, Inc., supra ;* and where there is genuine newly-discovered evidence which could not have been uncovered earlier, *see, e. g.,* cases cited in 3 Moore's, *supra,* ¶ 16.20 at 1137 n.5. *Cf. Redding v. Capital Cab Co., supra,* at 55. Of course, there may be situations in which the trial judge, in the sound exercise of discretion, ought to allow modifications.[5]

---

5. Appellant relies heavily on *Robbins v. Jordan,* 86 U.S.App.D.C. 304, 181 F.2d 793 (1950). *Robbins* was also a medical malpractice action—a suit for damages allegedly following from a doctor's failure to perform a Caesarian delivery. Plaintiffs had alleged in the complaint that defendant was a "duly licensed physician practicing medicine in the District of Columbia and holding himself out . . . as a practicing physician, and a doctor of medicine, and one well qualified in the treatment of disorders and diseases of women." After the judge ruled at trial that those allegations were not broad enough to permit proof that defendant had represented himself to plaintiffs as an obstetrician, plaintiffs sought and were denied permission to amend their complaint so as to enable them to introduce such evidence. They lost at trial and appealed. The circuit court, finding first that plaintiffs had been prejudiced by the trial court's procedural rulings, and then declining to decide whether in fact the allegations in the complaint should have been deemed sufficiently broad to permit introduc-

We affirm the trial court's denial of appellant's request for permission to raise issues beyond the scope of the pretrial order because, given what we perceive to have been appellees' well-founded claims of prejudice, surprise, and the absence of newly-discovered evidence, and given the circumstances of the discovery process (to be elaborated upon *infra*), that ruling was consistent with the spirit of Rule 16. The dispute over the proposed modification centered around appellant's attempt to introduce on the verge of trial a new theory of negligence against a new defendant—Dr. Fatehi. There can be no question that this would have presented genuine surprise and prejudice to the appellee hospital, which had been Dr. Fatehi's employer. The complaint contained only a cursory allegation of surgeon negligence. The staff neurosurgeons under whom Dr. Fatehi was working at the time of the operation had been dismissed with prejudice from the case almost a year before, and there was no mention of negligence on the part of any surgeon in appellant's pretrial statement. It therefore was reasonable for appellees to assume that there would be no such proffer at (or on the eve of) trial. *See Royal Indemnity Co. v. City of Erie*, 372 F.Supp. 1137, 1142–43 (W.D.Pa.1974). In addition, the record reveals that almost a year earlier, appellant had been offered the opportunity to depose Dr. Fatehi before his return to his native Iran upon his completion of residency training in Washington, and declined. There also was no indication that Dr. Fatehi would be returning to the United States at any time in the near future.

Additionally, in the face of other clear testimony by the anesthesiologists and by the neurosurgeons which established that there was only a 30-second lapse in appellant's normal heartbeat during the operation, it strains credulity to say that the correction Dr. DePerio made in his deposition transcript (altering two supposed "virtual admissions" of a ten-minute lapse) effectively injected new evidence into the case after the entry of the pretrial order, thus justifying a last minute modification. Rather, it appears that nothing significant had been either added to or subtracted from the information which appellant had available before filing her pretrial statement. Appellant—for whatever reason—had chosen at the last minute to place virtually complete reliance on a theory enjoying but fragile support in the record, and simply was foreclosed from advancing that argument.[6]

tion of the evidence, based its reversal on the liberal spirit of allowing amendments embodied in Rule 15(b). The court observed that the proposed amendment was at most an alteration of plaintiffs' theory of recovery, and that if the trial court was concerned about subjecting the defendant to last-minute surprise a continuance would have been the proper remedy.

*Robbins* differs from the case at bar in a number of respects. Initially, it involved a motion to amend pleadings under the second part of Rule 15(b) (governing amendments to pleadings over objection at trial, where the opposing party cannot demonstrate prejudice on the merits). It did not involve an attempt to modify the Rule 16 pretrial order, which implicates policy considerations of finality well beyond that embodied in Rule 15(b). While it is true that Rule 16 is to be read in light of Rule 15(b) to the extent of freely allowing modifications where the proposed change already has been tried by the express or implied consent of the parties, *Seek v. Edgar, supra*; 3 Moore's, *supra*, ¶ 15.13[1] at 15–156 (and cases cited therein), it is a different matter when modification is opposed by a party claiming actual surprise and/or prejudice. We cannot fail to recognize, although the *Robbins* court expressly reserved judgment on the question, that in *Robbins* the plaintiffs' complaint likely should have been deemed sufficiently broad to cover the amendment sought. Such is not the case herein, especially with regard to appellant's attempt to add the count against the former resident Dr. Fatehi—who in the meantime had left the United States. As a related matter, under the circumstances presented in *Robbins*, the defendant's claim of surprise was not very credible. As we thus perceive the equities in the two cases to be quite different, we are not persuaded that the result reached in *Robbins* should dictate the same result herein.

6. Appellant argues that the modification should have been permitted at trial because, had it been included only a week before in her pretrial statement, it surely would have been permitted without regard to possible surprise to appellees. We decline to further address that hypothetical situation, with its slightly altered balance of equities.

■ Moreover, to the extent that this appeal takes up appellant's attempt to alter her theories of appellee anesthesiologists' negligence pursuant to her expert's last-minute Statement of Principal Contentions, appellees argue persuasively that there never was any objection to appellant's so proceeding. The record indicates that the appellee anesthesiologists merely joined in the appellee hospital's objection to the naming of Dr. Fatehi as a defendant. That is what the lengthy colloquy on the morning scheduled for trial was about. Moreover, even had there been such an objection, as we read the record the claims against the anesthesiologists which were framed in appellant's expert's principal contentions were in large part merely restatements of those already enumerated in appellant's pretrial statements and incorporated in the court's order. Thus, although appellant chose to highlight only the ten-minute-lapse-in-heartbeat theory (readily recognizable as unrealistic) until the eve of trial, a number of other theories properly were in issue and there does not appear to have been any bar to her proceeding thereon. We will not conjecture as to the reason for her not doing so; however, we must take note of the fact. Our courts cannot provide to each claimant a guaranteed opportunity to delay proceeding on a case until that party finally hits upon what he believes may be a winning theory of recovery.

■ Next appellant moved to continue the case in order to afford appellees more time for discovery, having in mind the ultimate aim of making appellees and the court more favorably disposed toward allowing appellant to modify her pretrial statement. In denying that motion, the court was exercising the broad discretion it enjoys in this sphere. Such a decision will be upset on appeal only for an abuse of that discretion. *Beckwith v. Beckwith, supra,* at 958; *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). We are especially hesitant to overturn the denial of a day-of-trial request for a continuance; we see no reason to disturb the court's exercise of discretion on this point.

■ In so concluding, we observe that appellees' objections to a continuance were by no means dispositive. A trial judge may well determine that the interests of justice dictate the granting of one party's request for a continuance over the other side's predictable objection. Here the interests of justice did not so dictate. As expressed by appellant herself, the continuance was being sought mainly to give the parties a chance to contact Dr. Fatehi, depose him, and hopefully bring him in as a defendant in this action. There was, however, no indication that Dr. Fatehi could in fact have been contacted and deposed in his native Iran in the near future, or that he might come to the United States at any time soon. In light of these circumstances, and recognizing the fact that appellant did have an opportunity to depose him before, the court acted permissibly in refusing to grant a continuance on that basis. Moreover, the theories appellant had wished to advance against the anesthesiologists had been placed in issue already in her pretrial statement, and she would have been prepared to go forward with them at trial.

We note finally, in the context of this discussion of the denial of a continuance, a factor which influences our view of the trial court's overall disposition of the case. That is, we disagree with appellant's contention that she was consistently faultless in her preparations for trial. We realize that the anesthesiologists and their attorney were responsible for delaying the crucial depositions, but it appears that appellant could have been more persistent in her effort to take those depositions. Further, knowing the date set for trial, she could have invoked procedures to compel expeditious discovery. *See* Super.Ct.Civ.R. 37. Six weeks before trial, counsel for appellant twice expressed reservations about his ability to adhere to the planned trial date, but at the conclusion of the March 3 status conference he resolved to do all he could to be ready for the scheduled April 10 trial and he never moved for a continuance until the morning of the trial itself. Then, notwithstanding appellant's plea that we recognize

the unfairness inhering in the fact that four of the six weeks remaining before trial were "wasted" while the transcripts of the anesthesiologists' depositions were being prepared, expedited copies thereof were not requested.[7] There also was a delay of some days from the time the transcripts did become available to the time the plaintiff's expert received them for study.

In view of this relative want of diligence so near to trial (however understandable it might have been), and of appellant's participation in the pretrial conference without objection and/or motion for continuance, we are not persuaded to overturn the court's rulings. If appellant felt that her discovery had not been completed, she should not have routinely submitted her pretrial order and acquiesced in the entry of the court's order. *See, e. g., Handbook, supra,* 37 F.R.D. at 266. Bearing in mind all of the relevant factors, we are satisfied that the court did not abuse its discretion in refusing to grant a continuance, with the court and appellees being ready that day for trial.

Overall, the root of appellant's problems was her inability to pinpoint a viable theory of negligence. This led to frustration, attempts at last-minute procedural maneuvering, an unwillingness to go to trial on the basis of the previously developed theory, and, finally, to dismissal. To be sure, we prefer that the trial court resolve a case on its merits. Our system of justice does require, however, that the trial judge consider other interests as well in conducting the business of the court. The trial court did not abuse its discretion in the handling of this case.

*Affirmed.*

---

7. Limited financial resources on the part of appellant appear to have led to the decision not to request expedited transcription of the anesthesiologists' depositions.