Carrie B. **DOBBS**, Appellant,

v.

**PROVIDENCE HOSPITAL,**
Georgetown University
Hospital, Appellees.

No. 98–CV–310.

District of Columbia Court of Appeals.

Submitted June 24, 1999.

Decided Aug. 19, 1999.

John E. Anderson was on the brief for appellant.

Hugh W. Farrell was on the brief for appellee Providence Hospital.

Dane H. Butswinkas and R. Hackney Wiegmann, Washington, DC, were on the brief for appellee Georgetown University Hospital.

Before STEADMAN and REID, Associate Judges, and GALLAGHER, Senior Judge.

STEADMAN, Associate Judge.

■ Carrie B. Dobbs, survivor and next of kin of J.B. Dobbs, deceased, appeals the trial court's dismissal of her medical malpractice case during the course of trial for want of prosecution. The trial court dismissed her case on the second day of trial when Dobbs's remaining witnesses, particularly her expert, were not available to testify. Dobbs's case had been dismissed once already pre-trial for failure to prosecute, although the case was subsequently reinstated and Dobbs ordered to pay fines. Also, the trial court had been clear in its pretrial order that once the trial had started witnesses would be on call at the peril of the calling party and had admonished Dobbs's counsel and struck one of Dobbs's witnesses on the first day of trial when the court had to recess early because Dobbs had no more witnesses available to present. Based on Dobbs's pattern of dilatory conduct both pre-trial and during trial, and the trial court's earlier unsuccessful attempts to remedy the problem with lesser sanctions than dismissal, we conclude that the trial court did not abuse its discretion in dismissing Dobbs's case.

## I.

On January 6, 1995, Dobbs filed a medical malpractice action on behalf of her husband's estate against Providence Hospital ("Providence") and Georgetown University Hospital ("Georgetown"), alleging that the hospitals failed to properly diagnose and treat Mr. Dobbs during separate visits to the emergency rooms of each hospital, resulting in Mr. Dobbs's death. On March 5, 1997, the trial court issued a show cause order why Dobbs's case should not be dismissed for failure to prosecute because Dobbs refused to participate in drafting a joint pretrial statement as required by Super. Ct. Civ. R. 16. The trial court dismissed Dobbs's case for failure to prosecute on March 25, 1997. The trial court subsequently granted Dobbs's motion to reinstate the case on April 2, 1997,

but conditioned reinstatement upon Dobbs's payment to defendants of a $150 sanction. Upon learning of Dobbs's failure to pay the $150 sanction to defendant Georgetown, the court on July 27, 1997 ordered Dobbs to pay $210 to Georgetown by July 30, or her case against Georgetown would be dismissed.

At the pretrial conference, the trial court limited the witnesses that would be called at trial, providing that, "Plaintiff's witness list is restricted to Carrie Dobbs, Miriam [1] Dobbs, Timothy Dobbs, Robert Polk, Clarence McKenzie and Dr. Bergman." The trial court's pretrial order also expressly provided:

> Once the trial begins, witnesses will be put on call at the peril of the calling party. The trial will *not* be recessed because a witness on call is unavailable except in extraordinary circumstances. The Court will endeavor to accommodate out-of-town and expert witnesses if counsel alerts the Court ahead of time, and counsel may agree among themselves to call witnesses out of order; otherwise, the party calling a witness shall arrange for that witness' presence until cross-examination is completed, including the following trial days if need be. The failure to have a witness present for cross-examination following direct examination is grounds to strike that witness' testimony. (emphasis in original).

Shortly before 4:15 p.m. on January 12, 1998, the first day of trial, it became apparent that Dobbs's third witness, Timothy Dobbs, was not present to testify, despite the court's earlier warning that he should be present, and the court ruled that he could not be called during the case. As Dobbs had no other witnesses available at that time to testify, the court had to recess

early.[2] After the jury was excused, Dobbs's counsel apologized for not having more witnesses ready. The court inquired of Dobbs's counsel which witnesses he intended to call when trial resumed at 9:30 a.m. the next morning. Dobbs's counsel indicated that he would present three witnesses in the following order: Robert Polk, followed by Dr. Bergman, followed by Miriam Dobbs. The court admonished Dobbs's counsel to be prepared to proceed promptly the next morning: "We'll continue the case until 9:30 tomorrow morning and you better have a witness to put [on] at 9:30 tomorrow morning." The court also instructed Providence and Georgetown to have witnesses the next day ready to proceed with their case at the close of Dobbs's case.

When trial resumed around 9:50 a.m.[3] the next day, Dobbs called Robert Polk as its first witness. After Mr. Polk had completed his testimony shortly before 10:20 a.m., Dobbs had no other witnesses present to testify. Dobbs's counsel explained that one of his witnesses, Miriam Dobbs, had informed him the prior evening that she had been tested for a lump in her breast and that she could not be present in court because she was required to return to her medical provider at that time. The court told Dobbs to put on her next witness, and Dobbs's counsel indicated that he had no other witnesses ready to call. In response to the court's query about where the expert witness was, Dobbs's counsel replied that he was scheduled to arrive on a flight from Boston at 11:30 that morning. The court asked what Miriam Dobbs was going to testify about and, based on counsel's response, concluded that her testimony would be redundant.

---

1. Ms. Dobbs is also variously referred to in the record and by the parties as "Meriam Dobbs," "Marian Dobbs–Pink," "Merriam Dobbs," and "Mariam Dobbs."

2. The court had previously informed the parties that the session would go until 4:45 p.m.

3. Although the court had made it clear the previous day that trial would resume at 9:30 a.m., Dobbs's counsel did not appear until after 9:45 a.m., thus delaying the start of the morning session.

The court pressed Dobbs's counsel several times about what time he had instructed the expert to be in court, but Dobbs's counsel refused to provide a precise answer, indicating only that he told the expert to arrive Tuesday morning and that he would be the third witness, but he did not give the expert a time to be present.[4] The court noted that with Dr. Bergman's expected arrival time of approximately 11:30 a.m. at National Airport, the earliest that Dr. Bergman could arrive at the courthouse would be 12:00 noon. Dobbs's counsel also then indicated that he had other witnesses among the Dobbs children who were available to testify. These persons were not among the witnesses approved in the pretrial order. The court indicated again its view that such testimony would be cumulative and that the court had been clear the previous afternoon that Dobbs had only three witnesses left: Mr. Polk, Miriam Dobbs, and the expert.

At this point counsel for Georgetown moved to dismiss the case for want of prosecution, and Providence joined in the motion. The hospitals stressed (1) the history and pattern of delay by Dobbs's counsel that had previously resulted in dismissal of the action for failure to comply with Rule 16 requirements; (2) Dobbs's failure to abide by the pretrial order and the court's repeated warnings during trial that Dobbs must have witnesses available to testify; (3) the fact that the previous evening Dobbs's counsel represented that Dr. Bergman was to be his second witness and now argued that he was to be his last; and (4) the prejudice that the hospitals would suffer if their witnesses, emergency room doctors and nurses who had been taken out of their clinical rotations to be available to testify that day, had to rearrange their duty schedules and additional days, if even possible, due to Dobbs's delay.

The court dismissed Dobbs's case for failure to prosecute, emphasizing Dobbs's history of failing to diligently prosecute her case; the express language of its pretrial order directing that "once the trial begins witnesses will be put on call at the peril of the calling party" and that "[t]he trial will not be recessed because a witness on call is unavailable except in extraordinary circumstances"; and the court's admonitions to Dobbs on this subject the previous days. The court explained:

> I don't see anything untoward that has happened in this trial that should have ... prevented Dr. Bergman from being here to testify this morning. As far as I can see, plaintiff has been late in prosecuting this case ever since the case began.

> As counsel indicated, it had been dismissed earlier on because plaintiff hadn't complied with his Rule 16 obligations. Counsel hasn't had his witnesses available to be put on promptly yesterday, doesn't have them today, and this case is dismissed at this time with prejudice.

## II.

Dobbs appeals the dismissal of her case for failure to prosecute, arguing that the trial court erred in imposing any sanction for the late arrival of her out-of-town expert because it was inadvertent and excusable under the circumstances. Alternatively, Dobbs argues that, even if imposition of some sanction was justified, the trial court abused its discretion in failing to consider or impose a lesser sanction than dismissal of her case.

■ A. Super. Ct. Civ. R. 41(b) authorizes a trial court to dismiss an action "[f]or failure of the plaintiff to prosecute or to comply with these Rules or any order of Court ...." A dismissal for failure to prosecute "generally rests within the broad discretion of the trial judge, to be disturbed only in case of obvious abuse."

---

4. Although appellant in her brief references "travel difficulties" on the part of Dr. Bergman, no such argument was presented to the trial court and the record on appeal is barren of any evidence to support this statement.

*Taylor v. Washington Hosp. Ctr.,* 407 A.2d 585, 590 (D.C.1979), *cert. denied,* 446 U.S. 921, 100 S.Ct. 1857, 64 L.Ed.2d 275 (1980); *see also, e.g., Solomon v. Fairfax Village Condominium IV Unit Owner's Ass'n,* 621 A.2d 378, 379 (D.C.1993) (dismissal under Rule 41(b) "to be overturned only where the court 'imposes a penalty too strict or unnecessary under the circumstances'") (quoting *Braxton v. Howard Univ.,* 472 A.2d 1363, 1365 (D.C.1984) (citations omitted)); *Durham v. District of Columbia,* 494 A.2d 1346, 1350 (D.C.1985). We have also indicated, however, that a dismissal for failure to prosecute under Rule 41(b) is a sanction that should be used with caution. *See, e.g., Solomon,* 621 A.2d at 379; *Durham,* 494 A.2d at 1350; *LaPrade v. Lehman,* 490 A.2d 1151, 1154–55 (D.C. 1985). The factors to be considered in appellate review have been summarized as follows:

> Because dismissal is such an extreme sanction and because of the principle preferring trial on the merits, the trial court's exercise of discretion must be undertaken with care and · consistent with well-established standards. In exercising its discretion under the rule, the trial court should consider first other lesser sanctions. The sanction must also be tailored to the circumstances it is designed to address. Among the factors which the trial court should consider are: (1) the nature of the party's conduct, including whether it was willful; (2) the length of any delay in complying with the court's order; (3) the reason for the delay; and (4) any prejudice to the opposing party. Dismissal should not be imposed when the failure of a party to comply with the order is inadvertent or excusable.

*District of Columbia v. Serafin,* 617 A.2d 516, 519 (D.C.1992) (internal citations omitted).

Although an isolated instance of delaying conduct may not typically support dis-missal, *see LaPrade, supra,* 490 at 1155 and cases cited therein, where there has been evidence of a pattern of dilatory or contumacious conduct, the sanction of dismissal has been held not to be an abuse of discretion. *See Solomon, supra,* 621 A.2d at 380; *Durham, supra,* 494 A.2d at 1351 (D.C.1985); *Brown v. Cohen,* 505 A.2d 77 (D.C.1986). The cases upon which Dobbs primarily relies are cases involving a single act of dilatory or contumacious conduct on the part of the appellant. *See Wolfe v. Fine,* 618 A.2d 169, 173 (D.C.1992) (failure to retain adequate expert); *Serafin, supra,* 617 A.2d at 518–20 (single violation of court order regarding discovery); *LaPrade, supra,* 490 at 1154–55 (single failure to timely appear before the Civil Assignment Office). Here, by contrast, Dobbs's failure to have her expert available to testify was not an isolated incident, but rather the latest in a series of violations of court orders and rules of procedure, despite express warnings and other sanctions from the trial court. *See La-Prade,* 490 A.2d at 1155 ("Rule 41(b) dismissal appropriate in face of 'long and continuing' disobedience of court order") (citation omitted).

Dobbs argues that the trial court should not have imposed a sanction for her failure to have her expert witness available because such failure was excusable. She contends that she intended to first call another witness, Miriam Dobbs, whose testimony would have filled the time before her expert arrived, but that Miriam Dobbs could not appear because of a medical emergency. Even assuming that Miriam Dobbs's absence was justified, this does not excuse Dobbs's counsel's failure to have the expert available to testify when called. Dobbs's assertions on appeal that Miriam Dobbs was to testify prior to the expert is contrary to what Dobbs's counsel told the trial court the prior afternoon when questioned about the next days's witnesses.[5] Dobbs's counsel apparently knew

---

**5.** Counsel stated: "I'd start tomorrow with Mr. Robert Polk and then I would endeavor to work in Dr. Bergman after that and a Miss Meriam Dobbs after that."

that the expert likely would not arrive until at least noon at the courthouse.[6] Counsel provided no explanation to the court as to why the expert was not available in court, in particular why he had not told the expert to be present at 9:30 a.m., in compliance with the pretrial order and the court's express warnings. Dr. Bergman was retained and paid by Dobbs and was appearing at Dobbs's discretion, and it was Dobbs's obligation to ensure that her expert was present when required.

Dobbs also argues that the hospitals would not have suffered any prejudice if the trial court delayed the proceedings until her expert arrived. At the court's direction on the expectation that Dobbs would conclude her case earlier in the day, the hospitals had ensured the availability of their witnesses, emergency room doctors and nurses, on the second day of trial. The delay requested by Dobbs would have required rescheduling their rotations yet another day, if even possible, thereby inconveniencing the witnesses and straining the staffs of the hospitals at which they worked.

■ Moreover, in considering the issue of prejudice, we note that all of the cases relied upon by Dobbs involved pretrial dismissals.[7] By contrast, we take into consideration that this case involves the disruption of a trial already in progress where the court, jury members, witnesses, and opposing party and counsel were all hostage to Dobbs's delays. *Cf. Taylor, supra,* 407 A.2d at 591 ("A trial judge understandably need not look kindly upon last-minute

maneuvers which would wreak havoc on the court's trial calendar, and in the face of a refusal to go forward may in his discretion reject plaintiff's suggestion of dismissing without prejudice or resorting to some other milder sanction.") "As we have noted on several occasions, at issue is not solely prejudice to the immediate parties but also to other participants in the court system as a whole." *Van Man v. District of Columbia,* 663 A.2d 1245, 1247 (D.C. 1995). "Noncompliance with court orders and rules may cause the system to bog down and may adversely affect other litigants." *Perry v. Sera,* 623 A.2d 1210, 1219 (D.C.1993). Such delays prejudice "not only the defendant but also the ability of other persons—persons that are doing what is necessary to follow the rules—to utilize the system." *Id.* "Thus, even where little or no prejudice results to a particular defendant, dismissal may in appropriate circumstances be justified." *Van Man,* 663 A.2d at 1247.

We find it useful also to frame the issue in this case as analogous to a situation in which the plaintiff requested a continuance, which was denied, and then the court granted a directed verdict for the defendants when plaintiff was unable to proceed.[8] As we suggested by way of contrast in *Wolfe, supra,* a dismissal would be justified under a factual scenario similar to the case at hand:

> [T]his does not seem to be a clear situation where the plaintiff came to the day of trial on a last-minute request and nothing but blind hope of a continuance

6. When questioned by the trial court on January 13 as to when he last spoke with the expert, Dobbs's counsel replied "yesterday."

7. For the reasons stated herein, it may well be that had those cases involved disruption of a trial in progress, even though by only a single incident, dismissal would have been warranted.

8. We have repeatedly held that "the grant or denial of a continuance rests within the sound discretion of the trial judge, to whom we accord wide latitude." *Moctar v. United*

States, 718 A.2d 1063, 1065 (D.C.1998) (finding no abuse of discretion where trial court denied mid-trial request for continuance to find missing witness). Under our deferential standard of review for such cases, we would have no trouble concluding that the trial judge here did not abuse his discretion in refusing to grant a continuance where "a review of the trial proceedings reveals a clear failure on the part of [Dobbs] to exercise due diligence to insure [Dr. Bergman's timely] presence at the trial." *O'Connor v. United States,* 399 A.2d 21, 28 (D.C.1979).

and knowing that if the continuance were denied, he would have to proceed forthwith. There is a certain logic to an approach whereby a trial court at that point denies a plaintiff's motion for a continuance and then lets the chips fall where they may.... [Plaintiff] may proceed to trial as scheduled with whatever evidence he has, and the trial court may make any merits rulings called for, such as on a motion for a directed verdict. Or he may refuse to proceed and risk the consequences, such as an involuntary dismissal ...

618 A.2d at 175. Here, Dobbs's counsel came to trial on the second morning, late, without having the expert, that he had previously informed the trial court would be testifying as his second witness that morning, available to testify. He then waited until the trial court instructed him to call his second witness, requested a last minute recess,[9] and was unable to proceed with any other approved witnesses when the court denied the request. It matters not whether Dobbs's case was dismissed for failure to prosecute or instead the court granted a directed verdict against her after denying a request for continuance, as dismissal under the circumstances would be appropriate in either case.

■■■ B. Dobbs next contends that the trial court erred in failing to consider or impose a lesser sanction than dismissal. Although the trial court did not explicitly discuss alternative sanctions when it granted the motion to dismiss, the court in fact had already employed a range of lesser sanctions for Dobbs's earlier dilatory conduct: (1) When Dobbs failed to participate in the preparation of joint pretrial statements as required under Rule 16, the trial court initially dismissed her case, la-

ter reinstating her case and imposing a monetary sanction instead; (2) when Dobbs failed to pay monetary sanctions to Georgetown, the trial court imposed an increased monetary sanction; (3) when Dobbs violated the pretrial order by failing to have sufficient witnesses available to testify on the first day of trial, the court struck the testimony of the absent witness and warned counsel to have witnesses available to testify at 9:30 a.m. the next day. These earlier lesser sanctions apparently had no effect, as evidenced by Dobbs's continued dilatory conduct on the second day of trial: Dobbs's counsel arrived late on the second day of trial and was reprimanded by the court, and, when it was time to call the second witness, Dr. Bergman, he was unavailable and Dobbs provided no reasonable explanation for his unavailability. Under these circumstances, we conclude that dismissal was not too strict a sanction or otherwise an abuse of discretion.[10] We have previously stated that, " '[w]hile a trial court is not required to state its reasons for choosing dismissal or a default judgment rather than some lesser sanction, a court which fails to state any reasons at all runs a serious risk that its decision will not withstand appellate scrutiny.' " *District of Columbia v. Greene*, 539 A.2d 1082, 1084 (D.C.1988) (quoting *Ungar Motors v. Abdemoulaie*, 463 A.2d 686, 689 (D.C.1983)) (reversing default judgment sanction for violation of Super. Ct. Civ. R. 37 where "no indication in the record that the motions judge considered lesser sanctions"). A statement of the reasons for dismissing the case rather than imposing a lesser sanction was not required here where the record

---

**9.** Although Dobbs argues that only about an hour recess would have been required, the court concluded that the expert could arrive at the earliest at 12:00 noon, one hour and forty minutes later, at which time the trial court would have had to recess to take care of other matters, so that the expert's testimony would have commenced at the earliest at some point in the afternoon.

**10.** As discussed *infra,* the sanction of requiring plaintiff to rest on the evidence already presented would not have differed in practical effect from a dismissal, as plaintiff would have lacked any testimony from an expert witness.

indicates that the trial court in fact had applied lesser sanctions without effect.

Moreover, had the trial court instead of dismissing the case for failure to prosecute applied the lesser sanction, "tailored to the circumstances," *Serafin, supra,* 617 A.2d at 519, that it had applied the prior afternoon—striking the absent witness's testimony—the outcome would be no different. Either way, Dobbs's case would be dismissed with prejudice. Had the court sanctioned Dobbs by striking Dr. Bergman as a witness, Dobbs would have had no expert to testify in her medical malpractice case. As such, the court would have been forced to grant a directed verdict for Georgetown and Providence at the end of Dobbs's case. *See, e.g., Cleary v. Group Health Ass'n, Inc.,* 691 A.2d 148 (D.C. 1997) (upholding a directed verdict for defendant based on plaintiff's failure to present expert testimony in medical malpractice action).

Accordingly, for the forgoing reasons, the trial court's dismissal of Dobbs's case for failure to prosecute is

*Affirmed.*