# District of Columbia
# Court of Appeals

**No. 13-CV-1040**

SARAH LANDISE,

Appellant,

v.

THOMAS MAURO,

Appellee.



FILED

JUN 30 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

**CAB-2456-92**

On Appeal from the Superior Court of the District of Columbia
Civil Division

BEFORE: THOMPSON and BECKWITH, *Associate Judges*; and KING, *Senior Judge*.

**J U D G M E N T**

This case came to be heard on the transcript of record, the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the trial court's decision is reversed, and the case is remanded for proceedings consistent with this opinion.

For the Court:

*Julio A. Castillo*

JULIO A. CASTILLO
Clerk of the Court

Dated: June 30, 2016.

Opinion by Associate Judge Corinne Beckwith.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CV-1040

SARAH LANDISE, APPELLANT,

v.

THOMAS MAURO, APPELLEE.

FILED 6/30/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CAB-2456-92)

(Hon. Michael L. Rankin, Trial Judge)
(Hon. William M. Jackson, Trial Judge)

(Argued April 23, 2015                                    Decided June 30, 2016)

*John F. Karl, Jr.* for appellant.

*John Vail*, with whom *Ferris R. Bond* and *M. Azhar Khan* were on the brief, for appellee.

*Eugene A. Adams*, Interim Attorney General at the time the briefs were filed, with whom *Todd S. Kim*, Solicitor General, *Loren L. AliKhan*, Deputy Solicitor General, and *Donna M. Murasky*, Senior Assistant Attorney General, were on the brief for *amicus curiae*, the District of Columbia, in support of appellee.

Before THOMPSON and BECKWITH, *Associate Judges*, and KING, *Senior Judge*.

BECKWITH, *Associate Judge*: After the second trial held in this matter, a jury

sided with appellant Sarah Landise and against appellee Thomas Mauro, finding that the two had entered into a partnership to practice law in the District of Columbia, that Ms. Landise was entitled to fifty percent of the partnership's profits and losses, and that Mr. Mauro breached his fiduciary duties by converting partnership funds. Because the trial court decided that the case was sufficiently complex to merit bifurcation, the court limited the jury to the question of liability and ordered an accounting to determine the damages. Even though the court appointed a special master to conduct a final accounting of the partnership funds in June 2003, that accounting never happened. A string of conflicts and misunderstandings between the parties got in the way of the accounting, and each party blames the other for this failure. The case languished for over a decade before the trial court granted Mr. Mauro's Motion To Dismiss for Failure To Prosecute in August 2013.

Ms. Landise makes three main arguments on appeal: first, she argues that the trial court erred in taking the calculation of damages away from the jury, contending that the judge's decision to order an accounting ran afoul both of District of Columbia partnership law and the Seventh Amendment's right to a jury trial; second, Ms. Landise attacks the constitutionality of D.C. Code § 15-703 (2012 Repl.), which is a provision that allows a defendant to require a nonresident plaintiff to post security to cover potential court costs; and, third, Ms. Landise

argues that it was an abuse of discretion for the trial court to attribute the long delay in the accounting process to Ms. Landise's failure to prosecute her case in a diligent fashion.

We reject Ms. Landise's first two arguments, but accept her third. In our view, the fact that the accounting never came to fruition appears to be the product of an unclear trial court order, rather than any tactical delay on Ms. Landise's part. The trial court's order appointing the master did not meet the requirements of Super. Ct. Civ. R. 53 (b), which is entitled "Order appointing master" and specifies information that such an order must include. The purpose of Rule 53 (b) is to eliminate precisely the confusion that resulted in this case. We therefore reverse the trial court's ruling and remand the matter for the trial court to appoint a special master in accordance with the requirements of that rule.

## I.

This case began in 1992, when Sarah Landise brought suit against Thomas Mauro, alleging breach of an oral partnership agreement, conversion of partnership funds, and breach of fiduciary duty. The complaint alleged that Ms. Landise and Mr. Mauro had formed a law partnership in the District of Columbia, and the complaint requested an accounting of the partnership's assets. A jury trial was held, at which Mr. Mauro argued that there was no such partnership, and that there

could be no partnership because Ms. Landise was not licensed to practice law in the District. *See Landise v. Mauro (Landise I)*, 725 A.2d 445, 445–47 (D.C. 1998). The jury at the first trial sided with Mr. Mauro, finding that Ms. Landise and Mr. Mauro had not entered into an oral partnership agreement, and that Ms. Landise had engaged in the unauthorized practice of law in the District of Columbia. *Id*. at 446.

A division of this court reversed and remanded for a new trial. *Id*. at 446–47. The *Landise I* court clarified that Ms. Landise's lack of a license to practice law in the District (Ms. Landise was licensed only in Virginia) did not preclude her claim for breach of partnership against Mr. Mauro, and the court held that—because the evidence of partnership was "overwhelming"—the jury's confusion about the legal consequences of Ms. Landise's unauthorized practice might have infected the jury's verdict. *Landise I*, 725 A.2d at 446–47, 454. After this court remanded for a new trial, Mr. Mauro moved to require Ms. Landise to post security costs pursuant to D.C. Code § 15-703, a little-used provision of the D.C. Code that allows a defendant to require a nonresident plaintiff to "give security for costs and charges that may be adjudged against him on the final disposition of the cause." Judge Wendell P. Gardner, Jr., directed Ms. Landise to post security for the costs and fees of the litigation, and Ms. Landise complied, depositing $3,139.33 with the Clerk of the Superior Court in July 1999.

A second jury trial was held, before Judge William M. Jackson, in July 2000. This time it was Mr. Mauro who requested an accounting, while Ms. Landise took the position that the amount of damages was not overly complicated and could be determined by the jury. While Ms. Landise identified eight payments totaling $444,190.33 by Mauro & Landise clients that, she claimed, Mr. Mauro deposited into his personal bank account, Mr. Mauro argued that the alleged partnership actually had more than eighty open cases, and so any calculation of damages would be sufficiently complex to require an accounting.

Judge Jackson agreed with Mr. Mauro about the complexity of the damages. As a result, the trial court restricted the jury's consideration to six liability questions on a Special Verdict Form. The jury found for Ms. Landise, concluding that there was a partnership, that Ms. Landise was entitled to fifty percent of profits and losses, and that Mr. Mauro had breached his fiduciary duties. Judge Jackson did not let the jury compute damages or consider punitive damages, but directed counsel to select an auditor to conduct the accounting to determine the damages. Ms. Landise continued to argue that no accounting was necessary and filed a motion for entry of final judgment, which was denied by Judge Michael L. Rankin—who had taken over the matter—on February 23, 2001. The denial was "without prejudice to the filing of such an order following an accounting."

On June 10, 2003, Judge Rankin appointed Anita Isaacson as special master to conduct an accounting. The Order Appointing Special Master was a sparse one-page document "appoint[ing] [Ms. Isaacson] as special master to this case for the purpose of conducting a final accounting of the partnership funds"; it did not make any findings or mention the requirements of Super. Ct. Civ. R. 53, entitled "Masters."

In 2004, after having appointed the special master, Judge Rankin granted Mr. Mauro's motion to increase the amount of the bond that Ms. Landise was required to pay as a nonresident plaintiff under D.C. Code § 15-703. Ms. Landise deposited an additional $5,000 into the Superior Court registry and then appealed the order to this court. *See Landise v. Mauro (Landise II)*, 927 A.2d 1026 (D.C. 2007). The *Landise II* court dismissed that appeal, finding that the court lacked jurisdiction over the order directing Ms. Landise to pay an additional $5,000 because it was not a final trial court order. *See id.* at 1027–28. The court's opinion in *Landise II* acknowledged that Mr. Mauro's motion seeking an increased bond stemmed from a dispute between the parties regarding the costs and implementation of the accounting that Judge Rankin had ordered:

> At some point, a dispute arose between the parties regarding the costs of the accounting. Mauro claimed that Landise was refusing to pay her share of the costs related to copying and scanning certain documents, and Landise alleged that Mauro had disregarded an

> agreement that the copying be done in a particular
> fashion. As a result of this dispute, Mauro filed a motion
> to increase the security for costs pursuant to D.C. Code §
> 15–703(b), requesting that the trial court order Landise to
> pay an additional $25,000 into the court registry. In his
> motion, Mauro represented that "[t]he cost in this
> accounting process is expected to increase substantially,
> therefore the security must be increased." In opposing
> the motion, Landise argued that she should not be
> required to post an additional bond because she "won at
> trial and a money judgment will be entered into [*sic*] her
> favor." In response to Mauro's motion, the trial court
> ordered Landise to deposit an additional $5,000 into the
> court registry as security for costs related to the
> accounting process. Landise complied[.]

*Id.* at 1028–29.

The same issues that delayed the full accounting before *Landise II* continued, and the accounting that was ordered never happened. Each party blames the other for this failure: Ms. Landise argues that Mr. "Mauro took no action after the second remand to obtain the accounting he claimed he sought," while Mr. Mauro argues that it was Ms. Landise who failed to prosecute her case. On April 4, 2013, at the request of Ms. Landise, a status conference was held before Judge Rankin. At that status conference, Mr. Mauro made a Motion To Dismiss the Case for Failure To Prosecute, which the trial court set for a hearing.

The hearing on Mr. Mauro's motion took place on August 20, 2013. The hearing transcript reveals that the same confusion persisted, with counsel for Mr.

Mauro claiming that Ms. Landise and her counsel had "done everything in their power to obstruct going forward with the accounting," while counsel for Ms. Landise explained that he had been "waiting to hear from the Defendant [and his counsel because] they're the ones that wanted the accounting" in the first place. After hearing argument, Judge Rankin granted Mr. Mauro's motion to dismiss, because Judge Rankin was convinced that too much time had passed and that the delay should be held against Ms. Landise as the plaintiff. Judge Rankin explained:

> I've always viewed—whenever I sit in Civil, I've always viewed the Plaintiff to have the—the responsibility, if you will, the burden of pressing a case. You know, if a Plaintiff sits around after filing a complaint and says, I'm waiting for the Defendant [to] do something, that just never sounds right in my ears.
>
> . . . .
>
> I don't see the fairness in—at this stage of the process in trying to determine an accounting now that would come out with any reliable evidence. How do you go back and reconstruct to 1989 in 2013?
>
> . . . .
>
> I'm going to bite the bullet in this case. I'm going to grant the Defendant's Motion to Dismiss, based on my conclusion that the Plaintiff has not pressed this matter in a timely fashion to the detriment of the Defense and to the great—the substantial likelihood of an unfair result, if we were to go forward trying to reconstruct what assets were in 1989 and what happened afterward. Motion to Dismiss is granted.

This appeal followed.

## II.

### A. Decision To Appoint a Special Master To Conduct an Accounting

Ms. Landise first challenges the trial court's decision to appoint a special master instead of allowing the jury to determine both liability and damages. She contends that this decision violated both District of Columbia partnership law and the Seventh Amendment's right to a jury trial.

Super. Ct. Civ. R. 53 (a) provides that "the court may appoint a master . . . if appointment is warranted by . . . the need to perform an accounting or resolve a difficult computation of damages," and the District of Columbia "has long followed the traditional rule that ordinarily a partner may not sue a co-partner in an action at law with respect to partnership transactions until an accounting in equity, a settlement, or a promise to pay has been obtained." *Beckman v. Farmer*, 579 A.2d 618, 649 (D.C. 1990). We generally review the trial court's decision to appoint a master for abuse of discretion, but the Supreme Court has instructed that appellate courts must be especially vigilant when Seventh Amendment rights are at stake. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477–78 (1962) (explaining that "[t]he necessary prerequisite to the right to maintain a suit for an equitable accounting [is] . . . the absence of an adequate remedy at law," and that "to

maintain such a suit on a cause of action cognizable at law . . . the plaintiff must be able to show that the 'accounts between the parties' are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them" (quoting *Kirby v. Lake Shore & M.S.R. Co.*, 120 U.S. 130, 134 (1887))).

In this case, Judge Jackson's decision to order an accounting did not run afoul of District of Columbia partnership law or the Seventh Amendment. Judge Jackson ordered an accounting because he decided that the question of damages was too complicated for the jury:

> I am of the view that it is not a violation of the Seventh Amendment to have a bifurcated trial . . . That is if there is a—if the jury finds that there was a partnership, then there are significant issues raised as to the issue of damages concerning expenses, and liabilities of the partnership during any winding up process and as to what, if anything, the plaintiff was due and owing by virtue of the partnership. I think that is too—would be too confusing and the jury would ultimately on this evidence would have to speculate as to what those damages were, that there—whatever figure they came up with.

Renewing arguments she made in the trial court, Ms. Landise contends that because she is choosing to pursue revenues from only eight Mauro & Landise case files, that subset of revenue is all that is at issue in this case. As Mr. Mauro points out, however, the jury found that Ms. Landise is entitled to fifty percent of the partnership's profits and losses, and it also found the date on which the partnership

dissolved. Moreover, Judge Jackson properly determined that the damages calculation in this case—taking into account all of the money flowing into and out of the partnership, which, according to Ms. Landise's testimony at trial, had approximately 80 open cases at the time of dissolution—satisfies the criteria that justify an accounting under District of Columbia partnership law as set forth in cases like *Beckman v. Farmer*, 579 A.2d 618.

In *Beckman*, this court discussed at length the history, rationale, and limited exceptions to the general rule that a partnership action proceeds to an equitable accounting. *Id.* at 649–50. The *Beckman* court explained that the rule at bottom "serves a function arising from characteristics of the partnership relation"— simplifying what is often a complicated balance sheet. *Id.* at 649. Because "partners hold partnership property in undivided interests . . . [t]he value of partners' respective interests can[] be determined . . . only after partnership liabilities are satisfied, all assets are marshalled, the partners' capital accounts adjusted, and the amount of any surplus ascertained." *Id.* at 649–50. But this "general rule is subject to several exceptions reflecting its basic rationale," as an accounting may not prove necessary if, for example, the partnership's business "involves a single completed transaction or only one or a few items, and no complicated accounts are involved such that no accounting or appraisal is necessary to fix the amount due the plaintiff." *Id.* at 650.

Explicitly invoking *Beckman*, Judge Jackson concluded that none of the exceptions applied here because the damages in this matter were sufficiently complex to merit an accounting. He noted in particular that Ms. Landise was entitled to her rightful share of the partnership's total assets.[1] We discern no error in the trial court's reasoning or in its application of *Beckman*.

Ms. Landise alternatively argues that "this court should follow the trend of the law . . . and abolish or limit the accounting requirement for simple cases like this." We reject this invitation to change the District's partnership law. While Ms. Landise correctly identifies a trend in the law away from rote reliance on the accounting remedy,[2] this jurisdiction's partnership law already reflects that trend in

---

[1] Ms. Landise also argues that the trial court erred in refusing to submit to the jury the issue of punitive damages. As the court recognized, while the conduct that forms the basis of Ms. Landise's claim—including Mr. Mauro's denial of the partnership's existence and his efforts to retain partnership profits—represents proof of Mr. Mauro's substantive liability, it does not amount to "outrageous conduct which is malicious, wanton, reckless, or in willful disregard for another's rights." *Tolson v. District of Columbia*, 860 A.2d 336, 345 (D.C. 2004) (quoting *Chatman v. Lawlor*, 831 A.2d 395, 400 (D.C. 2003)). We accordingly find no error in the trial court's determination that there was no evidence from which a jury could reasonably find that Mr. Mauro evinced the required mental state and egregious conduct necessary to support a punitive damages award.

[2] More specifically, Ms. Landise cites a treatise—on which the *Beckman* court also relied—for the propositions that "[i]n general, the proliferation of exceptions to the exclusivity rule [that an equitable accounting serves as a partner's exclusive remedy in a partnership action] indicates some judicial hostility to the accounting remedy," and that "courts are increasingly taking the approach that

(continued…)

cases such as *Beckman*. *Beckman* does not suggest that an accounting is required in every case; rather, the court recognized certain exceptions, and in doing so fashioned a rule under which an accounting is necessary only where—as here—the circumstances are properly deemed to require it. 579 A.2d at 649–50.

Ms. Landise's Seventh Amendment claim runs into similar problems. As she suggests, the Seventh Amendment does limit a trial court's ability to take factual issues away from a jury. But *Dairy Queen* and *Beckman* make clear that ordering an accounting—instead of permitting the jury to wade through the partnership's financials—does not violate the Seventh Amendment when "the 'accounts between the parties' are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them." *See Dairy Queen*, 369 U.S. at 478 (citation omitted); *Beckman*, 579 A.2d at 649–50. As discussed above, we do not second-guess Judge Jackson's finding in this regard.

Nor do we agree with Ms. Landise that Judge Jackson's decision to order an accounting violated the Seventh Amendment's Reexamination Clause, which generally prevents the relitigation of facts found by a jury. *See Gasoline Prods.*

---

(…continued)
plaintiff will not be denied relief unless an accounting is really necessary in the given case." 2 Alan R. Bromberg & Larry E. Ribstein, Bromberg and Ribstein on Partnership § 6.08 (c), at 6:205 (Supp. 2013).

*Co. v. Champlin Refining Co.*, 283 U.S. 494, 497–500 (1931). Ms. Landise's argument rests on her contention that this case involves only the eight case files she identified. "The Order Appointing Special Master," she asserts, "almost guarantees that the facts found by the jury would be reexamined." Ms. Landise emphasizes that while the jury "was not asked to award damages, the necessary implication of the jury's responses on its verdict form was that [she] was entitled to one-half the partnership earnings which the jury was told consisted of eight cases resulting in deposits made to Mauro's checking account." But the jury's verdict form reveals only that the jury found that a partnership existed, that Mr. Mauro breached his duties to the partnership, that the partnership dissolved on a certain date, and that Ms. Landise was entitled to fifty percent of the partnership's profits and losses. These findings do not imply that the correct amount of damages is the sum total of the client files that were discussed at trial. That discussion formed the basis of the jury's liability finding, but damages presents a different question. Because the jury never determined damages, the court's order does not amount to a reexamination of the jury findings in violation of the Seventh Amendment.

## B. The Constitutionality of D.C. Code § 15-703

In her second main argument, Ms. Landise contends that D.C. Code § 15-703 is unconstitutional because it discriminates against her in violation of the

Privileges and Immunities Clause of Article IV, Section 2 of the Constitution, or, alternatively, in violation of the Privileges and Immunities Clause of the Fourteenth Amendment. Both clauses prevent states from discriminating against citizens of other states, and the Privileges and Immunities Clause analysis has been described in the following terms:

> As a general rule, Privileges and Immunities Clause analysis requires us to consider (1) whether a State has, in fact, discriminated against out-of-staters with regard to the privileges and immunities it accords its own citizens, and (2) if so, whether there is sufficient justification for the discrimination. A "sufficient justification" can be shown by a State demonstrating (a) a substantial reason for the discrimination, and (b) a reasonable relationship between the degree of discrimination exacted and the danger sought to be averted by enactment of the discriminatory statute. The availability of less restrictive means is considered when evaluating the measure and degree of the relationship between the discrimination and state interest.

*Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 94 (2d Cir. 2003) (citations omitted). In an amicus brief supporting the constitutionality of the statute, the District contends that neither clause limits acts of Congress—the legislature that enacted the law at issue—and that, in any event, requiring nonresident but not resident plaintiffs to post security as a condition of moving forward with an action in the District of Columbia courts does not offend the Constitution. We agree with the District that D.C. Code § 15-703 would not violate the Privileges and Immunities Clause, and so we can assume without deciding that the Privileges and

Immunities Clause applies to Congress when it legislates for the District of Columbia.[3]

Congress enacted the statute at issue at least as early as 1901, when it passed a comprehensive "Act to establish a code of law for the District of Columbia."

---

[3] In arguing that the Privileges and Immunities Clause of Article IV does not apply, the District relies on *Duehay v. Acacia Mutual Life Ins. Co.* for the proposition that the clause "is inapplicable to the District of Columbia [because it] is a limitation upon the powers of the states and in no way affects the powers of Congress over the territories and the District of Columbia." 105 F.2d 768, 775 (D.C. Cir. 1939). The District also cites approvingly Justice Harlan's dissent in *Shapiro v. Thompson*, where he wrote that "it appears settled" that the Privileges and Immunities Clause does not "limit[] federal power" and that, since "Congress enacted the District of Columbia residence statute" at issue in *Shapiro*, "the clause can have no application" in that case. 394 U.S. 618, 666–67 (Harlan, J., dissenting). In reply, Ms. Landise cites an opinion from this court suggesting that the Privileges and Immunities Clause applies to the District. *See Davis v. District of Columbia Dep't of Consumer & Regulatory Affairs*, 561 A.2d 169, 171 (D.C. 1989). As the District points out, however, *Davis* did not involve an act of Congress, there was no indication that the District of Columbia raised the argument that the clause was inapplicable, and, in any event, the court in *Davis* would not be able to overrule the binding authority of *Duehay*.

As for the applicability of the Privileges and Immunities Clause of the Fourteenth Amendment, the question is more clear-cut because the Fourteenth Amendment expressly applies only to the states, not to the United States or the District of Columbia. *See Neild v. District of Columbia*, 110 F.2d 246, 256 (D.C. Cir. 1940) (stating that "[t]he Fourteenth Amendment is not applicable in the District of Columbia"). Ms. Landise cites no authority for her assertion that the Fourteenth Amendment's Privileges and Immunities Clause applies in the District of Columbia through the Due Process Clause of the Fifth Amendment. *But see Smith v. United States*, 460 A.2d 576, 578 n.3 (D.C. 1983) (noting that while the Fourteenth Amendment "does not apply to the District of Columbia (being applicable only to the states), the [F]ifth [A]mendment due process clause contains equal protection principles").

Section 175 of the statute provided:

> The defendant in any suit instituted by a nonresident of the District of Columbia, or by one who becomes such after the suit is commenced, may, upon notice served on the plaintiff or his attorney, at any time after service of process on the defendant, require the plaintiff to give security for all costs and charges that may be adjudged against him on the final disposition of the cause.

Act of Mar. 3, 1901, ch. 854, § 175, 31 Stat. 1189, 1219.  The language of D.C. Code § 15-703 (a) remains substantially the same today.  Despite the provision's vintage, it has rarely been invoked.  Ms. Landise argues that her equal right to access the District of Columbia courts is fundamental, and while she acknowledges that the requirement that nonresident plaintiffs post a bond might have made sense around the turn of the twentieth century—when there was no global economy, travel was limited, and enforcing a judgment in a foreign state was difficult—she contends that the requirement can no longer be justified in the modern era when "judgments can be enforced almost as easily in another state as in the home state."

Whether or not D.C. Code § 15-703 (a) is less justified now than it may have been in the past, we are unwilling to declare the provision unconstitutional, on its face or as applied, for two major reasons.  First, the District's nonresident security statute is very similar to laws that the Supreme Court has long upheld.  In *Canadian Northern Railway Co. v. Eggen*, 252 U.S. 553 (1920), for example, the Court explained:

> From very early in our history, requirements have been imposed upon nonresidents in many, perhaps in all, of the states as a condition of resorting to their courts, which have not been imposed upon resident citizens. For instance, security for costs has very generally been required of a nonresident, but not of a resident citizen . . .. This court has said . . . [that s]uch a regulation of the internal affairs of a state cannot reasonably be characterized as hostile to the fundamental rights of citizens of other states . . . . The principle on which this holding rests is that the constitutional requirement [expressed in the Privileges and Immunities Clause] is satisfied if the nonresident is given access to the courts of the state upon terms which in themselves are reasonable and adequate for the enforcing of any rights he may have, even though they may not be technically and precisely the same in extent as those accorded to resident citizens.

*Id.* at 561–62 (internal quotation marks and citations omitted). The Supreme Court also upheld a substantially similar statute the following year in *Ownbey v. Morgan*, 256 U.S. 94 (1921).

Second, we are satisfied that the justification the District advances for the law—"to discourage non-meritorious suits by nonresidents and to avoid a situation in which a successful defendant, usually a District resident, is compelled to file suit in a foreign jurisdiction in order to collect costs awarded him here"—represents, as it must, a "substantial reason for the difference in treatment" between resident and nonresident plaintiffs, and that the discrimination "bears a substantial relationship to" the statute's goals. *See Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 284 (1985). This conclusion is only strengthened when we consider that the

requirement to post security for costs imposes a relatively minor hardship, especially when compared to the hardships in the cases on which Ms. Landise relies. *See Crotty*, 346 F.3d at 93–97 (striking down New York's "Nonresident Lobster law" because it was deemed to impinge on the ability of nonresident commercial lobstermen to pursue their livelihood); *Morris v. Crown Equip. Corp.*, 219 W. Va. 347, 355 (2006) (holding that the Privileges and Immunities Clause is violated when a state, in certain circumstances, closes off its courts to citizens of other states who are seeking to sue local residents).

## C. Motion To Dismiss for Failure To Prosecute

Finally, Ms. Landise argues that Judge Rankin abused his discretion in granting Mr. Mauro's Motion To Dismiss for Failure To Prosecute. Finding merit to this claim, we reverse the trial court's ruling and remand for the trial court to appoint a special master in accordance with the procedures set forth in Rule 53.

Super. Ct. Civ. R. 41 (b) provides in relevant part that "[f]or failure of the plaintiff to prosecute or to comply with these Rules or any order of Court, a defendant may move for dismissal of an action or of any claim against the defendant." This court has explained that "a dismissal for failure to prosecute 'generally rests within the broad discretion of the trial judge, to be disturbed only in case of obvious abuse.'" *Dobbs v. Providence Hosp.*, 736 A.2d 216, 219–20

(D.C. 1999) (quoting *Taylor v. Washington Hosp. Ctr.*, 407 A.2d 585, 590 (D.C. 1979), *cert. denied*, 446 U.S. 921 (1980)). At the same time, we have recognized that dismissal under Rule 41 (b) is "an extreme sanction which should be granted only sparingly or in extraordinary circumstances":

> Among the factors which the trial court should consider are: (1) the nature of the party's conduct, including whether it was willful; (2) the length of any delay in complying with the court's order; (3) the reasons for the delay; and (4) any prejudice to the opposing party. Dismissal should not be imposed where the failure of a party to comply with the order is inadvertent or excusable.

*District of Columbia v. Serafin*, 617 A.2d 516, 519 (D.C. 1992) (citations omitted); *see also Dobbs*, 736 A.2d at 220 (characterizing dismissal under Rule 41 (b) as "a sanction that should be used with caution").

In this case, the trial court abused its discretion in granting Mr. Mauro's Rule 41 (b) motion and sanctioning Ms. Landise for the long delay in obtaining an accounting. The transcript of the August 20, 2013, hearing—during which Judge Rankin dismissed the case—reveals that the parties and the court were confused about how the accounting was supposed to proceed. The parties agreed that Ms. Isaacson had been appointed master, but that for some reason Ms. Isaacson left the case and "[n]othing became of that." The parties' arguments on appeal reflect this continuing confusion over who was responsible for moving forward with the

accounting. Mr. Mauro claims that "[f]actually, Ms. Landise was under order to secure an accounting," whereas Ms. Landise asserts that she did not believe she had a duty to act because it was Mr. Mauro who sought the accounting in the first place. While Judge Rankin appeared to accept Mr. Mauro's view that Ms. Landise "was under order to secure an accounting," that position does not find support in the record. The Order Appointing Special Master simply appoints a special master "for the purpose of conducting a final accounting of the partnership funds." The order does not assign any special responsibilities to Ms. Landise or compel her to act in any way. If anything, the order suggests that Ms. Isaacson—and not Ms. Landise or Mr. Mauro—was being charged with overseeing the accounting because she was "independent of either party."

Judge Rankin's primary basis for dismissing the case was Ms. Landise's failure to prosecute the matter with the due diligence required of any plaintiff bringing a lawsuit. Yet while a plaintiff's delay in pressing her action can and should result in dismissal in some cases, *see, e.g.*, *Ripalda v. American Operations Corp.*, 673 A.2d 659, 663 (D.C. 1996), this is not such a case. Rather than being attributable to any dilatory conduct on Ms. Landise's part, the delay in this case appears to have stemmed from the trial court's incomplete application of the rule governing orders appointing a special master.

Rule 53 (b), which is entitled "Order appointing master," provides:

> The order appointing a master must direct the master to proceed with all reasonable diligence and must state:
>
> (A) the master's duties, including any investigation or enforcement duties, and any limits on the master's authority under Rule 53(c);
>
> (B) the circumstances—if any—in which the master may communicate ex parte with the court or a party;
>
> (C) the nature of the materials to be preserved and filed as the record of the master's activities;
>
> (D) the time limits, method of filing the record, other procedures, and standards for reviewing the master's orders, findings, and recommendations; and
>
> (E) the basis, terms, and procedure for fixing the master's compensation under Rule 53(h).

Super. Ct. Civ. R. 53 (b)(2)(A)–(E). The trial court's Order Appointing Special Master did not comply with the strictures of Rule 53. In the absence of the clear guidance that a proper order would have provided, the parties here lacked a basis for determining the next steps in conducting the accounting, and the resulting uncertainty and confusion delayed what should have been a prompt and efficient process.[4] Under these circumstances, and in light of the factors the court identified

---

[4] While it is true that Ms. Landise did not object to the defective order, the nature of her conduct (a delay in moving forward with a remedy that Mr. Mauro requested and she vigorously opposed) and the reason for the delay (confusion

(continued…)

in *Serafin*, the dismissal of Ms. Landise's case for failure to prosecute constituted an abuse of discretion. *See Serafin*, 617 A.2d at 519. We accordingly remand for the trial court to issue an order that complies with Rule 53, including defining the scope of the master's powers, setting time limits for the process, and explaining how the costs will be allocated among the parties.[5] Such an order will ensure that Ms. Landise receives the damages to which the jury concluded she was entitled in this case.

We are mindful, of course, that the partnership in this case dissolved many years ago, and that the difficulty of rendering an accurate accounting in light of this fact informed the trial judge's decision to "bite the bullet" and dismiss the case. But any questions concerning the feasibility of an accurate accounting—including whether the surviving partnership documents provide the necessary information—

---

(…continued)

stemming from the court's order) strongly support the conclusion that any failure on Ms. Landise's part to object under these circumstances should not serve as a basis for denying her relief. *Cf., e.g.*, *Dobbs*, 736 A.2d at 220 (dismissal for failure to prosecute properly granted where appellant committed "a series of violations of court orders and rules of procedure, despite express warnings and other sanctions from the trial court").

[5] *See* Super. Ct. Civ. R. 53 (h)(4) (explaining that "the court must allocate payment of the master's compensation among the parties after considering the nature and amount of the controversy, the means of the parties, and the extent to which any party is more responsible than other parties for the reference to a master").

are properly left to the special master in the course of performing her duties on remand.[6]

## III.

For the foregoing reasons, we reverse the trial court's decision and remand for proceedings consistent with this opinion.

*So ordered.*

---

[6] Despite Mr. Mauro's contention that a lost trial court file and five missing witnesses (two of whom have died) would make any accounting impossible, it is not obvious that an accounting of the Mauro & Landise partnership would require witnesses or the trial court file. More generally, to the extent any important materials have vanished, Mr. Mauro should bear the burden of explaining what happened, as it appears uncontroverted that he possessed all of the relevant documents at the beginning of this litigation.